# ↓ Juniata Bank *against* Beale.

Any one who is not a party to a suit on the record is presumed to be free from interest and competent to testify, until the contrary be made to appear by proof. Hence, in an action against a sheriff's sureties, to recover the amount of a writ of *fieri facias* which came to the hands of the sheriff's deputy for execution, the deputy is a competent witness for the defendant, unless it be proved by the plaintiff that he, in consequence of negligence or misfeasance, had made himself liable to his principal for the amount of the writ.

A sheriff's sureties are not liable upon their bond for the amount of an execution placed in the hands of the sheriff, which he agreed to pay to the plaintiff in consideration of his indebtedness to the defendant, if it appear that the defendant's personal property, which had been levied upon the execution, had been sold and the proceeds applied to prior levies.   And this although the sheriff may have given a receipt to the defendant in the execution for the amount of the money, stating how the money had been paid.

ERROR to the Common Pleas of *Mifflin* county.

This was an action by the Commonwealth for the use of the Juniata Bank against John Beale, administrator of William Beale, deceased, and was founded upon the official bond of Thomas Beale, late sheriff of Mifflin county, for whom the said William Beale, deceased, was a surety.

There were but two points in the case which the court deemed of sufficient importance to require an argument, and they arose out of the following facts:

Thomas Beale being the sheriff of Mifflin county, and Levi Reynolds his deputy, several writs of *fieri facias* were issued at the suit of the Juniata Bank against different persons, and amongst others, against David Reynolds: some of which, it appeared, came to the hands of Levi Reynolds, the deputy of the sheriff, and others to the hands of the sheriff himself.   Upon the trial of the cause, Levi Reynolds was offered as a witness for the defendant; to which the plaintiff objected, on the ground that the allegations of misfeasance and negligence in the execution of certain writs were applicable to those which had come to his hands as a deputy, and that he would therefore be liable to the defend-

[Juniata Bank v. Beale.]

ant in this action in the event of a recovery by the plaintiff: but the court overruled the objection and sealed a bill of exceptions.

The plaintiff claimed to recover the amount of a *fieri facias* at the suit of the Juniata Bank against David Reynolds, No. 72, April Term, 1820, for $1000, which was placed in the hands of the sheriff, Thomas Beale: and to support this claim, gave in evidence the following receipt:

Frederick Keller ⎱   59 to August Term, 1821.
     *v.*       ⎰       Debt, . . . . . $152.37½
David Reynolds. ⎰ Interest from 10th of March 1821
                ⎰ Costs, . . . . . . . . . . 11.50

Juniata Bank ⎱   No. 72, April Term, 1820.
     *v.*       ⎰       Debt, . . . . . $1000.00
David Reynolds. ⎰ Interest from 10th of March 1820
On this $100 paid. ⎰ Costs, . . . . . . . .     7.00

Thompson & Miller ⎱   No. 101, August 1821.
     *v.*       ⎰       Debt, . . . . . $150.00
David Reynolds. ⎰ Interest from 2d of June 1819
                ⎰ Costs, . . . . . . . .     7.25
                                          Sheriff B.

The firm of Beale & Reynolds being indebted to David Reynolds, the above defendant, for goods, &c., and myself three arks at $90 each, as well as for fees due the said David on the docket of Mifflin county, and collected by me, I do hereby agree to pay the above debts for which I am now liable as sheriff towards the debt due the said David, and hereby say, Received of the above defendant, David Reynolds, the debt, interest and costs of the three several suits above stated, as if the same had been paid to me in cash. I further agree to allow the said David twelve-and-a-half per cent. on the amount payable to the Juniata Bank for the depreciation on the money with which it may be paid.

                                        **THOMAS BEALE**, *Sheriff.*

*Lewistown, May 26th 1821.*

To rebut the effect of this, the defendant gave in evidence other executions against David Reynolds which had issued to the coroner prior to the date of that in favour of the Juniata Bank, upon which the defendant's personal property had been levied and afterwards sold for $184.86; and the property levied upon these executions, and sold, was the same as that levied upon the execution of the Juniata Bank by the sheriff.

The court below (Burnside, President) instructed the jury that the sheriff's sureties were not made liable by the fact of the

sheriff giving the receipt which had been read in evidence, unless it were made to appear how the plaintiffs in the execution were prejudiced by it : that the sheriff could not intermingle his official duties with his private liabilities ; and if he did so, in the manner set out in this receipt, his sureties were not thereby made liable.

To this opinion the plaintiff excepted.

*Parker* and *Benedict,* for plaintiff in error, cited on the first point 3 *Watts* 135 ; 10 *Johns.* 478 ; 2 *Stark.* 769 ; and on the second point 8 *Watts* 394 ; 17 *Serg. & Rawle* 364 ; 11 *Johns.* 269 ; 8 *Johns.* 20.

*Valentine* and *J. Fisher, contra,* cited 2 *Serg. & Rawle* 122 ; 2 *Rawle* 199.

The opinion of the Court was delivered by

KENNEDY, J.—This suit was instituted upon a sheriff's recognizance, by the Juniata Bank of Pennsylvania, against John Beale, administrator *de bonis non cum testamento annexo* of William Beale deceased, who was one of the sureties of Thomas Beale, as sheriff of Mifflin county.　Writs of *fieri facias,* issued in favour of the bank against different persons, debtors to the bank, had at different times been placed in the hands of the said Thomas, as sheriff, for execution.　It was alleged on the part of the bank that in some instances he had received moneys upon the executions, which he had not paid over or accounted for to the bank ; and that in others he had taken personal property of the defendants named therein, sufficient to satisfy the debts mentioned in the writs, from which he had either made the money, or made himself liable to pay it to the bank, by suffering the property to remain in the possession of the debtors, and to be used and disposed of by them, without accounting to or satisfying the bank in any way for it.　Ten errors have been assigned in all ; but with the exception of the first and seventh, not the slightest difficulty is presented in any of them.　The matters complained of in them are so obviously right, as to render it somewhat difficult to make them appear more so.　They will, therefore, be passed without further notice.

The first error is a bill of exception to the court's admission of Levi Reynolds as a competent witness on behalf of the defendant. The witness had been a deputy of Thomas Beale, the sheriff.　He was objected to on the ground, as the counsel for the plaintiff alleged, that he was interested in the event of this action ; that he, as deputy of the sheriff, had actually received some of the moneys on account of which this suit was instituted, and had likewise, in the same character, executed some of the writs of *fieri facias,* by seizing the personal property of the defendants therein

I. — U

[Juniata Bank v. Beale.]

named, which had never been accounted for to the bank as it ought to have been. But it was not shown that there was any actual delinquency on the part of the witness as deputy sheriff; and in the absence of evidence showing it, we think it would not have been right to have presumed it. It lay upon the party making the objection to his competency as a witness, on the score of interest, to prove that he was so, otherwise it was the duty of the court to admit him as competent; for every person, who is not a party on the record to the suit, is presumed to be free from interest in the case, and therefore competent to testify as a witness in it. Had it been proved to the satisfaction of the court below, that the witness had made himself accountable, as deputy, to Thomas Beale, his principal, for any part of the claim made by the plaintiff in this action, he certainly would not have been a competent witness to prove any thing in regard to it, that would have gone in the slightest degree to have released or discharged his principal, or his estate, or his sureties from their liability. But as nothing of this sort was made to appear, we think that the court were right in admitting Levi Reynolds to testify as a witness on behalf of the defendant.

The seventh error, which is the next that we proposed noticing, is an exception to the charge and answers delivered by the court to the jury on the fourth, fifth, and sixth points submitted by the counsel for the plaintiff. That portion of the charge and the answers to the points embraced in this error, all relate to a claim made by the plaintiff in this case against the sheriff, arising from his acts and conduct under a writ of *fieri facias*, put into his hands for execution, at the suit of the plaintiff against David Reynolds, for a debt of $925.24, with interest thereon from the 10th of March 1820. This *fieri facias* was issued to April term of the court below, 1820, No. 72, and placed in the hands of his deputy, to which a return was made, " levied on one carriage and harness, one gig and harness, a quantity of store goods, household furniture," which remained unsold for want of buyers. To January term 1821, a writ of *venditioni exponas* was issued; and on the 7th of January 1821, a rule of the court below was obtained and entered, calling on the plaintiff to show cause why the proceedings in the case should not be set aside. During the pendency of this rule, which, in truth, has never been discharged or disposed of, on the 26th of May 1821, Thomas Beale, the sheriff, gave an instrument of writing, and a receipt, to David Reynolds, the defendant in the *fieri facias* to the following effect, to wit:

" Frederick Keller ⎫  No. 59, to August Term 1821. Debt $152.37½.
         *v.*        ⎬  Interest from 10th of March 1821. Costs 11.50.
David Reynolds.  ⎭

[Juniata Bank v. Beale.]

Juniata Bank   )    No. 72, April Term 1820. Debt $1000. In-
     *v.*       }   terest from 10th of March 1820. Costs $7.00.
David Reynolds. )    $100 paid.

Thompson & Miller )    No. 101, August Term 1821.    Debt
       *v.*        }   $150.   Interest from 2d June 1819.   Costs
David Reynolds.  )    $7.25.    Sheriff B.

"The firm of Beale & Reynolds being indebted to David Rey-
nolds, the above defendant, for goods &c., and myself three arks
at $90 each, as well as for fees due the said David on the docket
of Mifflin county, and collected by me; I do hereby agree to pay
the above debts, for which I am now liable as sheriff, towards the
debt due the said David, and hereby say, Received of the above
defendant, David Reynolds, the debt, interest, and costs of the
three several suits above stated, as if the same had been paid to
me in cash.     I further agree to allow the said David twelve and
a half *per cent.* on the amount payable to the Juniata Bank, for
the depreciation on the money with which it may be paid.

                                 " Thomas Beale, *Sheriff.*
" *Lewistown, May* 26*th*, 1821."

This receipt was delivered by the sheriff to David Reynolds,
and retained by the latter, as it would seem, without being shown
to any one, until an adjourned meeting of the court below, held in
May 1826, when upon the application of the defendant in the exe-
cution, David Reynolds, to the court, the following entry was
made on the record of the cause : " Defendant appeared in court,
and produced sheriff Beale's receipt for debt, interest and costs,
and it appearing to the court that the plaintiff had instituted a
suit against the bail of the sheriff, the proceedings in this cause
stayed until the determination of this suit."    Previously, how-
ever, to any writ of *fieri facias* being issued against David Rey-
nolds by the bank for their debt referred to in this receipt, two
writs of *fieri facias* were issued against David Reynolds, one at
the suit of William and John R. Worrell, for a debt of $600.51, to
January term of the court below, 1820, No. 75, directed to the
coroner of the county, to which he returned, " levied one stove,
drum and pipe, one set of chairs, one breakfast-table, together with
*all the personal property of David Reynolds.*"    The other to the
same term of the court, No. 97, at the suit of Swedeley & Knight,
directed to the same officer, for a debt of $712.44, with interest
from the 1st of March 1819, to which the coroner returned : " Le-
vied one stove, drum and pipe, one breakfast table, together with
*all the personal property of David Reynolds.*"    The seizure of the
property, by the coroner, under these writs, included all that was
taken subsequently by sheriff Beale under the *fieri facias* of the
Bank, No. 72, returnable to the April term following; and it was

all sold by the coroner afterwards upon a writ of *venditioni expo-nas* to August Term of the court 1822, No. 162, for the aggregate of $184.86. This sum was distributed among several execution creditors of David Reynolds, and among the number the bank was one, that received of it $47.23. It was claimed by the counsel for the bank, on the trial of this cause, that sheriff Beale had made himself liable for the whole amount of the bank's writ of *fieri facias* against David Reynolds. First, because, after having taken goods of Reynolds of sufficient value to satisfy it, he permitted them to be taken and disposed of by Reynolds. And, secondly, because he gave a receipt to Reynolds, acknowledging that he had made himself liable to the bank for the debt, and that he had received it of Reynolds. The court below, however, instructed the jury on the first ground taken of liability, that if they believed that all the goods of Reynolds, taken in execution at the suit of the bank by sheriff Beale, were previously taken under prior executions by the coroner of the county, and afterwards sold by him for a sum insufficient to satisfy the prior executions, Beale could not be held liable to pay any thing on account of his seizure of the goods. This instruction of the court we think was perfectly correct, because testimony had been given, going to prove that all the goods, taken in execution by the sheriff, had been taken previously by the coroner, under prior executions in favour of William and John R. Worrell, and in favour of Swedeley and Knight, against David Reynolds, and that they had been sold afterwards for the highest and best prices that could be obtained for them, the aggregate of which fell greatly short of paying the executions under which the goods were first taken and sold. On the second ground, the court instructed the jury that the testator of the defendant in this action or his estate, as the surety of the sheriff, could not be made liable to pay any thing, unless it appeared from the evidence, that the instrument of writing, given on the 26th of May 1821, by the sheriff to David Reynolds, had occasioned a loss, in some way, to the bank; and if it had, then only to the amount of such loss. Now, this direction would seem to have been quite as favourable to the bank as it had any right to claim. For the writing given by the sheriff to Reynolds, showed most clearly on its face, that the sheriff had received nothing whatever, upon the execution from Reynolds towards satisfying it, but that the sheriff, in consideration of his indebtedness to Reynolds, undertook with Reynolds to pay the amount of the execution to the bank, and to acquit Reynolds of the debt owing by him to the bank, by acknowledging that he, the sheriff, had received from Reynolds the amount of the execution, the same as if it had been received in cash. If the bank, or its attorney, had been present when this writing was given by the sheriff to Reynolds, without objecting to it, and had afterwards attempted to make the sureties of the sheriff liable for the amount of the execu-

tion on account of it, would it not have been considered an unfair attempt, to say the least of it, on the part of the bank, as against the sureties, and could it have prevailed? It seems to me that it could not: and if so, what difference is there between that case and the one under consideration? Here the bank, though not present at the giving of the receipt and approving it, subsequently give their approval of it, and on the strength of it alone wish to make the sureties of the sheriff answerable. It cannot be pretended that the sheriff has any authority to make his sureties liable for the payment of his private debts, yet the receipt given by him in this case upon the face of it, and the use that is attempted to be made of it, would, if it were to prevail, be giving to him an authority direct to bind them to do so. It is not like the case, where the sheriff being indebted to the defendant in the execution, which he has in his hands to execute, to the amount of it, agrees with the defendant in the execution to pay it for him, in discharge of his own debt, which he owes to him, and gives the defendant in the execution an express receipt for the amount of it, as being received in cash, without more. For there, as it appears from the face of the receipt, that the sheriff has actually received from the defendant in the execution, the amount of it in money, the sheriff may be estopped from contradicting or explaining it by showing upon what consideration it was given. And if he would be estopped, his sureties would be so too, and hence all would be liable. But in the present case, the receipt shows on the face of it that neither money nor any thing else was received in discharge of the execution, not even a release from Reynolds to the sheriff of the debts which the latter owed to him. 1 *Inst.* 352 b; *Sinclair* v. *Jackson*, (8 *Cowen Rep.* 543.) Neither can it be pretended here, as in the case just put, that the plaintiff in the execution has or could have been deceived by the terms of the receipt, in regard to what the sheriff actually did towards making the money upon it. The face of the receipt showed that the sheriff had done nothing whatever to prevent the bank from proceeding by further execution to collect the amount of their debt from David Reynolds.

It is also proper to bear in mind that the sheriff, when he gave the receipt in question, had no writ of *fieri facias*, or judicial process, authorizing him to take the property, either real or personal, of the debtor, David Reynolds, if he had any at the time, for satisfying the debt. So that the sheriff was not chargeable with having granted any indulgence to Reynolds in violation of his duty as sheriff, or with having disobeyed or neglected to perform any duty imposed upon him as sheriff, or to execute any judicial process in his hands against Reynolds, at the time, to the prejudice of the bank, in any way whatever. He had had a writ of *fieri facias*, returnable to the April Term of the court 1820, in favour of the bank, upon which he had seized property that was subject,

I. — 30                    U *

[Juniata Bank v. Beale.]

however, to prior executions against David Reynolds, as has been stated above, in the hands of the coroner. But on the 7th of January 1821, previously to the sheriff's giving the receipt, all further proceeding by him to sell the property so seized, was suspended by a rule granted by the court, to show cause why the proceeding in that case should not be set aside. Thus the hands of the sheriff were tied up, so that he could not go on to make a sale of the property he had taken in execution. And if he had not been so prevented, and had made a sale of the property, it would have been fruitless, as was proved afterwards by the sale of the coroner. It is clear, therefore, that before, and at the time he gave the receipt to Reynolds, he had no authority whatever to touch either his person or property, or to levy money of him for the use of the bank. It may possibly be that he might have received the debt of the bank from Reynolds, if the latter had chosen to pay it to him voluntarily, and that his receipt would, in such case, have been a good acquittance; for seeing the sheriff's authority to act, in the matter, had been suspended at the instance of Reynolds, it might be considered that Reynolds had a right to withdraw the objection made by him to the court, which occasioned the suspension of the sheriff's authority to proceed to a completion of the execution against him. But as no money was actually paid by Reynolds to the sheriff, and as the receipt given showed clearly that none was paid; and as it was impossible that the bank could be deceived or prejudiced in any way by the sheriff's giving such receipt, we, therefore, think that the bank had no right to recover in this action the debt owing to it by Reynolds, from the estate of the sheriff's surety. Indeed it would seem as if the counsel of the bank, in the court below, never entertained the opinion that it was entitled to recover the debt owing by Reynolds, on the ground of the receipt given by the sheriff; for it formed no part of their evidence given in chief on the trial of the cause, but was given in evidence after the defendant had closed his evidence in support of his defence, under some notion that it might have an operation as rebutting evidence.

Judgment affirmed.